### SAMUEL HOUGHTON *vs.* JOSIAH KENDALL & others.

A testator in his will gave to his daughter S. the income of two thousand dollars, to be paid to her annually during her natural life, and ordered his executors at her decease " to pay over to the children who may be the surviving heirs of said S.'s body, to be divided in equal shares among them." S. died after the testator, leaving one son, and four grandchildren who were the children of a deceased son. *Held*, that the surviving son was entitled to one half of the fund, and the grandchildren to the other half.

The plaintiff in a bill in equity in the nature of a bill of interpleader, to obtain instructions as to the proper disposition of a fund in his hands, is not entitled to take part in the argument of the questions involved.

BILL IN EQUITY in the nature of a bill of interpleader, brought by the executor of the will of James Wilder, seeking instructions as to the proper disposition of the principal of a fund left under the following provisions of the will :

" I give and bequeath to my daughter Sally Kendall, wife of Josiah Kendall, the income or interest of two thousand dollars, which sum is to remain in the hands and under the control of my executors, and to be by them put at interest, with good security, and the interest arising therefrom, after paying my said executors a reasonable sum for taking care of said legacy, to be paid to my said daughter Sally annually during her natural life, said interest to commence in one year after my said decease, and, at the decease of said Sally Kendall, I order my executors

hereinafter named to pay over to the children who may be the surviving heirs of said Sally's body, to be divided in equal shares among them. I further order if it should become necessary for my said daughter Sally to use any part of the aforesaid sum of two thousand dollars for her support during her life, then such part as shall be absolutely necessary shall be deducted from the sum ordered to be paid to the children aforesaid."

The bill set forth, and it was admitted, that the testator died in 1842; that at that time the said Sally had three children, Susan, Josiah and Edwin; that Susan died in 1843; that Edwin died in 1860, leaving a wife and four children; that the husband of said Sally died in 1860; and that said Sally died in 1863, leaving her son Josiah, and the four children of her deceased son Edwin, as her only heirs at law.

At the argument, the children of Edwin were not represented, and the counsel for the executors, after reading the papers, were going on to submit their views upon the questions involved; but the court interposed, the chief justice saying that the whole duty of an executor, in a case like the present, is performed when he has brought the parties in interest before the court; and that, considering his relation to the parties and the fact that he cannot be allowed to charge the estate for the costs of an argument, he ought not to take any part in the discussion. Subsequently, however, objection being waived, and some peculiar reasons appearing to show that there was no danger of collusion, the court allowed the argument to proceed, remarking that this case must not be drawn into a precedent, as the rule which had been announced had been adopted by the court upon full consideration.*

*E. Mellen,* for the executor, contended that the children of Sally took a vested interest in the fund at the death of the testator,

---

* Subsequently, in March 1864, the court passed a general rule that " in bills by executors and trustees to obtain the instructions of the court, and in bills of interpleader, or in the nature of interpleader, no solicitor or counsel for the plaintiff shall appear or be heard or act for and in behalf of any or either of the defendants."

and that, if not, still the phraseology of the will would include the grandchildren, and cited 2 Williams on Executors, (4th Amer. ed.) 988, 1083, 1116, 1318, 1319, and cases there cited; 1 Jarman on Wills, (4th Amer. ed.) 726, 734; 2 Ib. 35, 379, 609–658, 691, and cases there cited; 4 Kent Com. (6th ed.) 214; *Williamson* v. *Field*, 2 Sandf. 533, 550; *Mackell* v. *Winter*, 3 Ves. 543; *King* v. *Isaacson*, 3 Smale & Gif. 371; *Blanchard* v. *Blanchard*, 1 Allen, 228.

*W. S. Davis*, who also appeared for the executor, contended that the remainder was contingent, taking effect upon Sally's death, and that the phraseology of the will would include the grandchildren, and cited, in addition to cases cited in the opinion, 2 Williams on Executors, (4th Amer. ed.) 988, 995, 1006, 1023, 1316, 1319, 1364, and cases there cited; 1 Jarman on Wills, (4th Amer. ed.) 726, 744, and cases there cited; *Workman* v. *Workman*, 2 Allen, 472; *Edwards* v. *Edwards*, 15 Beav. 357; *Bacon* v. *Cosby*, 4 De G. & Sm. 261; *Hill* v. *Nalder*, 15 Eng. Law & Eq. R. 316.

*G. M. Brooks*, for Josiah Kendall. The words of survivorship refer to the time of distribution. See authorities cited above, and 2 Jarman on Wills, (4th Amer. ed.) 76, 617, 618, 635, and cases there cited. Especially in bequests of personal estate. 2 Williams on Executors, (4th Amer. ed.) 1319, *n.* *Winslow* v. *Goodwin*, 7 Met. 363, 375. The phraseology of the will in this case admits of no other interpretation. 1 Jarman on Wills, (4th Amer. ed.) 430, and cases there cited. *Abbott* v. *Bradstreet*, 3 Allen, 587. *Blanchard* v. *Blanchard*, 1 Allen, 223, and cases cited. *Hall* v. *Hancock*, 15 Pick. 255. *Cowdin* v. *Perry*, 11 Pick. 503. By the word "children," the testator intended to designate the immediate offspring of Sally. This word cannot be extended to grandchildren, if there are any children in being to take, at the time the legacy becomes payable. 2 Jarman on Wills, (4th Amer. ed.) 70, and cases cited. The words "heirs of said Sally's body" are limited and controlled by the word "children." See *Buxton* v. *Uxbridge*, 10 Met. 87; *Annable* v. *Patch*, 3 Pick. 360, 363; *Vaughan* v. *Dickens*, 2 Dev. & Bat. 52: *Loveday* v. *Hopkins*, Ambl. 273.

HOAR, J.   The bequest to Mrs. Sally Kendall was clearly of an estate for life only, with a farther interest in the principal depending upon a contingency which has never happened.

The first question, therefore, which is presented is this : Whether the remainder created by these words, " and, at the decease of said Sally Kendall, I order my executors hereinafter named to pay over to the children who may be the surviving heirs of said Sally's body, to be divided in equal shares among them," is a vested or contingent remainder ?   This obviously must be settled by determining whether the bequest is to those only who should survive Sally Kendall, or whether the survivorship intended can be referred to the death of the testator.

Without reviewing in detail the great multiplicity of cases, more or less analogous, which have been cited in argument, or can be found in the books, we are of opinion that the language of the testator limits the legacy to those children, who, when the legacy becomes payable, may then be " surviving heirs of the body " of Mrs. Kendall.   Such is the natural meaning of the terms used.   Strictly speaking, no one could be an heir of Mrs. Kendall until her death.   And although the maxim *nemo est hæres viventis* has been frequently disregarded in the construction of wills, where it was plain that the word " heirs " was used in a popular sense, as a word of description, without technical accuracy, and as equivalent to " children," " issue " or " representatives ; " yet here it is added as a qualification to the word " children," previously used, and confines the direction to pay to the " children " " who may be the surviving heirs of the body."

At the time of Mrs. Kendall's death, her heirs at law and next of kin under the statute of distributions were her son Josiah Kendall and the four minor children of her deceased son Edwin ; and the remaining questions are, whether the surviving son takes the whole of the legacy, or, if the grandchildren are included in the designation of legatees, whether they take *per stirpes* or *per capita ?*   The general rule is, that where there are children who fully answer the description, and confining the bequest to them will satisfy the whole apparent design of the testator, grandchildren or other more remote descendants will not

be permitted to share with them, because in the ordinary use of language the word " children " does not include grandchil-dren. But the words " heirs of the body " are of larger signifi-cance, and, like the word " issue," will include descendants of every degree. And where there is any reason to suppose that such was the intention of the testator, " children " may be con-strued as meaning " issue." Thus in *Wythe* v. *Thurlston,* Ambl. 555, an estate was by deed directed to be sold on failure of male issue of A., and the money to be equally divided between four persons, or the respective issue of their bodies ; but if any one were dead at that time, to be equally divided among the survi-vors of them, and their respective children, in case any of them be dead having issue of their body ; and all four died before the contingency happened ; one without issue, one leaving a son, one leaving grandchildren but no children, and the fourth having children, grandchildren and great-grandchildren ; Lord Hard-wicke held that the word " children " would include all the de-scendants, and that they took *per stirpes,* and not *per capita.* The case is more fully reported as *Wythe* v. *Blackman,* 1 Ves. Sen. 196 ; and the decision is there said to have been that the descendants should take *per stirpes,* as to the stock ; that is, that the issue of each of three who died leaving issue should take one third ; but *per capita* among themselves. In *Pattenden* v. *Hobson,* 17 Eng. Law & Eq. R. 16, it was held that " heirs of the body," as applied to a legacy, should be interpreted as " the next of kin, issue of the body," and that under it the chil-dren generally, and not the heirs at law only, were entitled to take. To the same effect is *Price* v. *Lockley,* 6 Beav. 180. In the recent case of *Loring* v. *Thorndike,* 5 Allen, 257, it is said to be a settled rule that where personal estate is bequeathed to a person for life, and at his decease to his " heirs," the word " heirs " will be interpreted to mean either those persons who are strictly heirs by the common law, or those who are next of kin, and take under the statute of distributions, according to the intention of the testator, if his intention has been mani-fested in his will.

In the English courts, some very nice distinctions have been

taken between a legacy to the next of kin, and a legacy to the next of kin according to the statute of distributions. *Emsley* v. *Young*, 2 Myl. & K. 82. *Withy* v. *Mangles*, 10 Clark & Fin. 215. So that it is held that under the phrase " next of kin " merely, the father of a testator would take equally with the son. And the refinements of construction have been carried so far that Lord Campbell, in *Withy* v. *Mangles*, rather bluntly remarks that " it is impossible to deny that the law has, by some bad luck, got into a strange state." But when the testator refers to the statute of distributions, the best authorities lead to the conclusion that the reference is to be made, not merely to determine the persons who are to take, but the quality of their estate. *Horn* v. *Coleman*, 1 Smale & Gif. 169. *Hinckley* v. *McLarens*, 1 Myl. & K. 27. *Anon.* 1 Madd. 36. *Booth* v. *Vicars*, 1 Colly. R. 6. In the last three cases the next of kin were held to take *per stirpes.*

In *Flinn* v. *Jenkins*, 1 Colly. R. 365, the language of the bequest was this : " The remaining property to be equally divided between my two sons for their lives only, and then to be equally divided among their children when of age." It was held that the children took *per stirpes*. And in the case of *Phillips* v. *Garth*, 3 Bro. C. C. 64, Buller, J. said : " If it had pleased the court originally to say that next of kin should take in the same manner as under the statute, I should not have objected to it, for it seems to me they should take *per stirpes.*"

In this commonwealth we find no authority which would conflict with the adoption of the construction which seems to us reasonable, that when the word " heirs " is used in a gift of personalty, it should primarily be held to refer to those who would be entitled to take under the statute of distributions, and to indicate that they should take in the same manner and in the same proportions as if it had come to them as intestate estate of the person whose " heirs " they are called. And in the case at bar, the addition of the words " who may be the surviving heirs of the body " to the word " children " shows, as we think, an intention to qualify and explain the ordinary sense of the word " children ; " that it was the meaning of the testator that

it should thereby be made to include all the heirs of the body
of Mrs. Kendall who should survive her ; and that they should
take in that capacity, in that right, and in the same proportions
in which lineal descendants take the personal estate of an an-
cestor.    There is nothing in the will to lead us to suppose that
the testator intended to deprive one branch of his daughter's
family of any share in this legacy, because one grandchild might
die before it became payable, it being wholly uncertain upon
which the loss might fall.    If it were understood that " chil-
dren " strictly were intended, the words " heirs of the body "
add nothing to the meaning, because children are of course
heirs of the body.    But by construing " children " to mean all
who should be heirs of the body, and treating the added words
as expressive of an intention that they should take as " heirs
of the body," that is, as issue with right of representation, effect
is given to the whole language of the will.

A decree should therefore be entered that Josiah Kendall is
entitled to one half of the legacy of two thousand dollars, and
the children of Edwin Kendall, by right of representation, to
the other half; and the costs of the litigation are to be paid
from the fund.